**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

| | | |
|---|---|---|
| **ERICK ROLDAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **4:04-cv-62 AS** |
| | ) | |
| **BERENDA, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM, OPINION, & ORDER**

This matter is before the Court on the Motion for Summary Judgment (Docket No. 22) filed by Defendant Berenda, Inc. on May 31, 2006.  The Court heard oral arguments in Lafayette, Indiana on August 28, 2006, and the issues have been fully briefed.  For the reasons stated below, the Motion for Summary Judgment is granted in part and denied in part.

I. Introduction

Erick Roldan ("Roldan") has alleged that Berenda, Inc. ("Berenda") failed to provide health benefits to which he was entitled in violation of ERISA and that Berenda terminated Roldan's employment with the purpose of interfering with Roldan's attainment of rights in violation of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq* ("ERISA").  Roldan further alleged that Berenda engaged in unlawful and discriminatory employment practices on the basis of Roldan's race in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

Finally, Roldan has alleged in Count IV that Berenda failed to provide timely notice to Roldan of his rights in violation of the Consolidated Omnibus Budget Reconciliation Act, 29 U.S.C. § 1161 *et seq* ("COBRA") and that Roldan was discharged because he opposed engaging in conduct at Berenda's behest for which he could have been held personally liable.[1]

Roldan seeks: (1) a declaratory judgment that Berenda's acts, policies, and procedures violate the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981; (2) a permanent injunction enjoining Berenda from engaging in any employment policy or practice that discriminates against any employee on the basis of their race; (3) a permanent injunction enjoining Berenda from engaging in any employment policy or practice that violates ERISA and/or COBRA; (4) reinstatement to the position he held prior to termination or front pay in lieu thereof; (5) compensatory, consequential, and emotional distress damages and lost wages and benefit; (6) punitive damages; (7) attorneys' fees, litigation expenses, and costs; (8) pre- and post-judgment interest on all sums recoverable; and (9) any and all other relief as may be just and proper.

## II.  Jurisdiction

Jurisdiction is proper in this case pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 and 29 U.S.C. § 1332(e).  Venue is proper pursuant to 28 U.S.C. § 1391.

## III.  Standard of Review

---

[1] The Court dismissed (per Plaintiff's request) Count IV of Roldan's complaint at the pretrial conference held on December 22, 2005.  *See* Docket No. 15.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986)*; Bragg v. Navistar Int'l Trans. Corp*., 164 F.3d 373 (7th Cir. 1998). After affording the parties adequate time for discovery, a court must grant summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The initial burden is on the moving party to demonstrate, "with or without supporting affidavits," the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. *Celotex*, 477 U.S. at 324 (quoting FED. R. CIV. P. 56); *Larimer v. Dayton Hudson Corp*., 137 F.3d 497 (7th Cir. 1998), *reh'g denied*. A question of material fact is a question which will be outcome- determinative of an issue in the case. The Supreme Court has instructed that the facts material in a specific case shall be determined by the substantive law controlling the given case or issue. *Anderson*, 477 U.S. at 248. The moving party may discharge this initial burden by demonstrating that there is insufficient evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325. The moving party may also choose to support its motion for summary judgment with affidavits and other admissible material,

3

thereby shifting the burden to the nonmoving party to demonstrate that an issue of material fact exists.  *See Kaszuk v. Bakery & Confectionary Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982); *Faulkner v. Baldwin Piano & Organ Co.*, 561 F.2d 677, 683 (7th Cir. 1977).  The nonmoving party cannot rest on its pleadings, *Weicherding v. Riefel,* 160 F.3d 1139 (7th Cir. 1998); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920-21 (7th Cir. 1994); nor may that party rely upon conclusory allegations in affidavits.  *Smith v. Shawnee Library* Sys., 60 F.3d 317, 320 (7th Cir. 1995).

During its summary judgment analysis, the court must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party.  *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560 (7th Cir. 1996).  However, the plaintiff must do more than raise a "metaphysical doubt" as to the material facts.  *Matsushita*, 475 U.S. at 577; 106 S. Ct. at 1351.  Rather, he must come forward with "specific facts" showing that there is a genuine issue for trial.  *Id.* at 587 (*quoting* FED. R. CIV. P. 56(e)).

IV.  Facts

Roldan was hired as an at-will employee by Berenda  in February, 2002.  (D. Berenda Aff. at ¶ 8; Roldan Dep. at pp. 181-82).  Roldan is a Hispanic male, and during the time of his employment at Berenda, Berenda knew Roldan was Hispanic and working in the U.S. on a work visa card.  (Roldan Dep. at 22-24 and 188-89; D. Berenda Aff. at ¶ 8).

Berenda offers health insurance benefits to its employees which are available ninety (90) days after the start of an employee's employment and upon completion of an application for insurance prescribed by the insurance provider.  (K. Berenda Aff. at ¶ 6). On May 2, 2002, Kim Berenda sent Roldan a letter reminding him that he needed to submit his application for health insurance benefits.  (K. Berenda Aff. at ¶ 12).  Roldan asserts that he never received this letter.  (Roldan Dep. at p. 51, ll. 16-19).  In September 2002, Roldan completed the application for health benefits.  (K. Berenda Aff. at ¶ 16; Roldan's Response to Admission #2).  During the same month, Roldan's application was approved and he began receiving health benefits.  (Roldan Dep. at pp. 52 and 73; K. Berenda Aff. at ¶ 17).

On Friday, October 25, 2002, Roldan failed to complete a delivery to Delaware, Ohio because, according to Roldan, he was not feeling well as a result of his high blood pressure.  (Roldan Dep. at p. 83, ll. 18-23, p. 84, ll, 10-18, and 86 ll. 21-22; K. Berenda Aff. at ¶ 23).  As a result, Roldan was reprimanded.  (Roldan Dep. at p. 89, ll. 22 through p. 90, ll. 1; K. Berenda Aff. at ¶ 23).  On October 31, 2002, Roldan was in Bensenville, Illinois.  Roldan spoke with David Berenda early that afternoon, at which time David Berenda directed Roldan to stay in Bensenville in order to pick up a load at midnight and then to deliver the load to Louisville, Kentucky.  (David Berenda Aff. at. ¶ 18).  Roldan was in Bensenville at 1:10 p.m.  (K. Berenda Aff. at ¶ 37; D. Berenda Aff. at ¶ 17). Roldan claimed he was out of time under the federal guidelines and refused to make the

run.  (Roldan Interrogatory Answer at ¶ 21; Roldan Dep. at pp. 130-136).  David Berenda told Roldan that he could take his break while in Bensenville, which would give him at least the eight (8) hours rest time required under the guidelines.  (D. Berenda Aff. at ¶ 20).  Roldan refused, stating that he was returning the truck to Lafayette instead.  David Berenda advised Roldan that if he refused to make the run and instead returned to Lafayette, he could consider his actions as evidence that Roldan no longer wanted to work for Berenda.  (D. Berenda Aff. at ¶ 21; Roldan Dep. at p. 136).  Roldan returned the truck to Berenda on November 1, 2002.  (Roldan Dep. at p. 135, l. 25 through p. 136, l. 3).  As a result of the Bensenville incident, Roldan's employment at Berenda was terminated. On November 2, 2002, Roldan went to the emergency room where he was diagnosed with "extremely high blood pressure."  (Roldan Dep. at p. 70, ll. 3-7).

Roldan kept a Driver's log book for the hours and miles he traveled while employed at Berenda.  (Roldan Dep. Ex. #9).  The original log book was never turned over to Berenda.  (Plaintiff's Response to Admission at ¶ 10, Roldan Dep. at pp. 146 and 151).  Logbook pages have attached carbon copies.  The top, white sheet is to be submitted to the employer on a weekly basis, and the bottom, yellow sheet is retained for the driver for his records and, if needed, for review by the Department of Transportation. (Roldan Dep. at pp. 26 and 202-203).  Original entries in Roldan's logbook from October 28, 2002 through October 31, 2002 show when Roldan was in his sleeper berth.  (K. Berenda Aff.).  Roldan placed an "x" over those original entries then made other entries

6

to show that he was driving or performing other duties.  (K. Berenda Aff. at ¶¶ 32, 33; Roldan Dep. at p. 154).  Roldan's notations on the original pages of the logbook do not coincide with the corresponding carbon pages.  (Roldan Dep. at pp. 157-60).

V.  <u>Discussion</u>

Berenda asserts that it is entitled to summary judgment in its favor on Counts I, II, III, and V of Roldan's complaint.  The Court will address each count individually.

*A.  Count I*

Count I alleges that Roldan was denied health insurance benefits to which he was entitled under ERISA and that Berenda's denial of those benefits was intentional, willful, and in reckless disregard of his rights.  Berenda asserts that it is entitled to summary judgment on Count I because Roldan did receive health insurance benefits and because Roldan cannot show that Berenda had a specific intent to deny those benefits under ERISA.

Section 510 of ERISA provides, in pertinent part:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline or discriminate against a participant or beneficiary for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan . . . .

29 U.S.C. § 1440.  Roldan may recover under Section 510 if he can establish that Berenda withheld benefits with the specific intent to interfere with his ERISA benefits. *Lindemann v. Mobil Oil Corp.*, 141 F.3d 290, 295 (7th Cir. 1998).

Roldan does not set forth any evidence creating a genuine issue of material fact as

7

to whether Berenda acted with specific intent to deny Roldan coverage under ERISA.  It is undisputed that Kim Berenda sent Roldan a letter in May of 2002 reminding him to submit his application for insurance.  It is also undisputed that Roldan began to receive health benefits in September of 2002.  Roldan's belief that Berenda had the intent to interefere is insufficient.  Rather, he must show a "desire to frustrate attainment or enjoyment of benefit rights . . . and can avoid summary judgment only if the materials properly before the district court, construed sympathetically, allow for such a conclusion." *Isabell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005).  Viewing the evidence in a light most favorable to Roldan, there are no genuine issues of material fact concerning his ERISA claim in Count I.  Thus, the Court grants Berenda's summary judgment motion as to Count I.

 *B.  Count II*

 Count II alleges that Roldan's employment was terminated with the purposes of interfering with Roldan's attainment of rights in violation of ERISA and that Berenda's actions were intentional, willful, and in reckless disregard of his rights.  Berenda asserts that it is entitled to summary judgment on Count II because Roldan was terminated from his employment for legitimate reasons and because Roldan cannot show that Berenda terminated his employment with a specific intent to interfere with Roldan's right to receive insurance benefits under ERISA.

 Under Section 510, no cause of action lies where the lost of benefits is a mere

consequence of, but not the motivating factor behind, a termination of employment.

*Meredith v. Navistar Int'l Transp. Corp.*, 935 F.2d 124, 127 (7th Cir. 1991). A plaintiff

must demonstrate that the defendant had the specific intent to deprive or interfere with the

employee's attainment of his protected benefits.  *Little v. Cox's Supermarkets*, 71 F.3d

637 (7th Cir. 1995).  The main obstacle facing most plaintiffs is that they rarely have the

"smoking gun" to make their case.  Accordingly, a plaintiff may satisfy his evidentiary

burden by circumstantial evidence, and the burden of establishing a prima facie case rests

on the plaintiff.

The Seventh Circuit has stated that to establish a prima facie case under § 510 of

ERISA, the plaintiff must demonstrate that he (1) is a member of the protected class; (2)

was qualified for his job; and (3) the circumstances under which he was discharged

provide a basis for believing that the employer had the prohibited intent of depriving him

of benefits.  *Isbell*, 418 F.3d at 796 (citations omitted).  In a § 510 case, the Court need

not "'determine whether a plaintiff has established a prima facie case where a defendant

has advanced a legitimate, non-discriminatory reason for its action.'"  *Id.* (quoting

*Lindemann,* 141 F.3d at 296).

In this case, Berenda has offered legitimate, non-discriminatory reasons for

terminating Roldan's employment.  Chief among these is Roldan's refusal to perform his

job duties connected with an assigned truck run for Berenda on October 31, 2002.

Having presented a legitimate, nondiscriminatory reason for the discharge, the burden

shifts back to the plaintiff to show that the proffered reason is pretextual and that "the 'motivating factor behind the termination' was the specific intent to interfere with the plaintiff's ERISA rights." *Salus v. GTE Directories Serv. Corp*., 104 F.3d 131, 135 (7th Cir. 1997) (quoting *Meredith*, 935 F.2d at 127).

Roldan asserts that his "employment was terminated because he placed his need for medical care over the interests of the employer, medical care that he could only afford through his group insurance plan." Plaintiff's Response at 18. Even when viewing the evidence in Roldan's favor, his contention that he was fired specifically due to Berenda's desire to deny him insurance benefits amounts only to Roldan's belief. This belief and Roldan's unsupported statement that Berenda "knew" he had high blood pressure are insufficient to create an issue of material fact for summary judgment. *See Meredith*, 935 F.2d at 127 (noting that Plaintiff speculated "extensively" but failed to show that the "motivating factor" behind his discharge was the employer's specific intent to interefere with his benefits). Moreover, Roldan has failed to establish that Berenda's explanation for Roldan's termination was a pretext. The only evidence he presented to counter Berenda's explanation consists of his above-mentioned speculation; Roldan's speculation is insufficient to establish that Berenda's specific intent in terminating him was to deprive him of his health benefits. Accordingly, the Court grants Berenda's summary judgment motion as to Count II.

*C.  Count III*

Count III alleges that Berenda discriminated against Roldan on the basis of his race in violation of the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981. Specifically, Roldan bases his claim on the fact that he did not receive health insurance benefits at the start of his employment.  (Roldan Interrogatory Response #s 17-19; Roldan Dep. at 191-192).  Berenda asserts that it is entitled to summary judgment on Count III because Roldan cannot show that Berenda acted with a specific intent to discriminate against him because of his race under 42 U.S.C. § 1981.

Section 1981 provides, "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."  42 U.S.C. § 1981(a).  The first question before the Court is whether Roldan's at-will employement at Berenda constitutes a "contract" for purposes of § 1981.

In *Walker v. Abbott Laboratories* – a case involving Illinois law – the Seventh Circuit held that at-will employees may state claims under § 1981.  *Walker*, 340 F.3d 471, 476 (7th Cir. 2003).  The Court in *Walker* explained that "at-will employment, though capable of being terminated by either party at any time, is nonetheless a contractual relationship."  *Id*.  The Court further noted that excluding at-will employment relationships from the scope of § 1981 would "contravene Congress's intention [that] the Civil Rights Act of 1991 . . . restore the broad scope of Section 1981 to ensure that all Americans may not be harassed, fired or otherwise discriminated against in contracts

11

because of their race." *Id*. at 477.

The Seventh Circuit has not yet determined whether at-will employment is contractual under Indiana law.  It is important to note, however, that the *Walker* Court's reliance on Illinois state contract law was not central to its holding.  The Court also noted that since its decision in *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998), five other circuit courts that addressed this issue have "held that at will employees can state claims under 1981." *Walker*, 340 F.3d at 476 (citing *Skinner v. Martinez*, 253 F.3d 337 (8th Cir. 2001); *Lauter v. Int'l Business Machines*, 216 F.3d 258 (2d Cir. 2000); *Perry v. Woodward*, 199 F.3d 1126 (10th Cir. 1999); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir. 1999); and *Fadeyi v. Planned Parenthood Ass'n of Lubbock, Inc.*, 160 F.3d 1048 (5th Cir. 1998)).  Since the decision in *Walker*, district courts in this Circuit in Indiana and Wisconsin have cited *Walker* to support the contention that at-will employment relationship qualify as contracts within the meaning of § 1981.  *See Williams v. Doyle*, — F.Supp.2d —, 2007 WL 1599101, *7 (W.D.Wis., May 31, 2007); *March v. ADT Security Systems*, 2006 WL 3365670, *3 (S.D. Ind. Nov. 20, 2006).

In *March*, the Southern District of Indiana held that "Section 1981 does encompass at-will employees, and is not dependent on Indiana's interpretation of state contract law." 2006 WL 3365670, *3.  Importantly, the court stated that its decision in *Hornbuckle v. Sage Health Services of Indiana, Inc.*, 2006 WL 91307 (S.D.Ind. Jan. 13, 2006) – a case

cited and relied upon by the Defendant – "was erroneous and is hereby overruled."[2]
*March*, 2006 WL 3365670 at *3.  Based on the foregoing, the Court concludes that at-will
employees such as Roldan can bring a claim under § 1981.

To bring a claim for race discrimination under § 1981, the plaintiff must show
direct evidence of discriminatory motive or indirect evidence of intentional
discrimination.  Roldan admits that he lacks direct evidence[3] and, as such must proceed
under the indirect, burden-shifting approach delineated in *McDonnell Douglas Corp. v.
Green*, 411 U.S. 792, 802 (1973). Under the indirect method, the employee must first
come forward with evidence of a prima facie case of discrimination.  *Id*. at 792.  If the
employee offers evidence supporting a prima facie case, a presumption of discrimination
arises, and the employer must then articulate a legitimate, non-discriminatory reason for
taking the adverse employment action.  *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir.
1998).  And if the employer produces evidence of a nondiscriminatory reason for its
action, the burden shifts back to the employee to prove by a preponderance of the

---

[2]In *Hornbuckle v. Sage Health Services of Indiana, Inc*., 2006 WL 91307 (S.D.Ind. Jan.
13, 2006), the Court cited *Orr v. Westminster Village North, Inc*., 689 N.E.2dd 712 (Ind. 1997) in
its holding that Indiana state law does not regard at-will employment as contractual in nature.
*Hornbuckle*, 2006 WL 91307, *2.  But in *March*, the Court stated that the Supreme Court's
holding in *Orr* was inapposite to the case currently before it because it did not address nor
analyze the general "contractual nature" of at-will employment.  Rather, the *March* Court stated
that the *Orr* holding "is narrow and applicable only to cases involving an employee's attempts to
convert his employee handbook into a unilateral contract, requiring his employer to have good
cause before terminating him."  *March,* 2006 WL 3365670, *2.

[3]*See* Roldan Dep. 190; Plaintiff's Response at 9-10.

evidence that the employer's proffered reason for its decision was not the actual reason but rather a pretext for discrimination. *Adreani v. First Colonial Bankshares Corp.*, 154 F.3d 389, 394-95 (7th Cir. 1998).

To establish a prima facie case of discrimination, Roldan must show that:  (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectation; (3) he suffered an adverse employment action; and (4) other similarly situated employees who were not members of the protected class were treated more favorably.[4]  *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 538 (7th Cir. 2007).  The parties do not dispute [for purposes of this motion] that Roldan is a member of a protected class.  Thus, only the second, third, and fourth elements are in dispute.

Berenda asserts that Roldan failed to meet his employer's legitimate expectations because he did not submit his application for health insurance until four months after he became eligible for the benefits, leading Berenda to believe that he did not want the benefit.  Defendant's Brief at 11.  However, whether an employee applies for elective health insurance is not a performance-related issue and has no bearing on whether the employee is meeting his employer's legitimate, job-related expectations.  Because Berenda fails to assert any other means by which Roldan failed to meet its legitimate performance expectations, the Court finds that Berenda concedes that Roldan did, in fact, meet those expectations.  Morever, the Seventh Circuit has recognized that a plaintiff may

---

[4]The same analytical approach is applied in Title VII and § 1981 claims.  *See Patton v. Indianapolis Public School Bd.*, 276 F.3d 334, 338 (7th Cir. 2002).

14

create a material dispute about his own abilities by simply attesting that he was performing satisfactorily.  *See Roberts v. Separators, Inc*., 172 F.3d 448, 451 (7th Cir. 1999) (assuming that plaintiff could establish this element and moving on to related pretext inquiry).  Viewing the evidence in the light most favorable to the plaintiff, Roldan has come forward with sufficient evidence of his satisfactory performance to create an issue for trial.

Berenda also asserts that Roldan did not suffer an adverse employment action because he did receive health insurance benefits after submitting his application in September, 2002.  It is undisputed that Roldan began working for Berenda in February of 2002 and that Berenda employees are eligible for health insurance benefits ninety (90) days after the start of employment and upon completion of an application for insurance prescribed by the insurance provider.  It is also undisputed that Roldan began receiving health insurance benefits, after completing an application for those benefits, in September, 2002.  The dispute here is over the period from May, 2002 until September, 2002 in which Roldan did not receive those benefits.

A plaintiff's burden to establish a prima facie case is not an onerous requirement, and the "plaintiff's evidence on the prima facie case need not be overwhelming or even destined to prevail; rather, the plaintiff need present only 'some evidence from which one can infer that the employer took adverse action against the plaintiff on the basis of a statutorily proscribed criterion.'" *Bellaver v. Quanex Corp*., 200 F.3d 485, 493 (7th Cir.

2000) (quoting *Leffel v. Valley Fin. Servs.*, 113 F.3d 787, 793 (7th Cir. 1997) (also noting that the "prima facie burden should not be applied rigidly").  Roldan has submitted evidence that Berenda failed to provide him with the opportunity to participate in the group insurance plan, causing diminished benefits of his employment.  Understanding that Roldan's burden at this stage is not onerous, the Court finds that there is evidence to support this element of his prima facie case.

To establish the final element of his prima facie case for summary judgment purposes, Roldan also must come forward with evidence that tends to show that Berenda treated similarly situated white employees more favorably than it treated him.  Berenda asserts that Roldan "was not treated any differently than other employees because every employee was required to submit an application as proscribed by the provider before he or she could receive health insurance benefits."  Defendant's Brief at 10.  Roldan asserts that in July, 2002, he learned from other drivers that they were receiving benefits – including health, dental, and vision insurance – through Berenda's group plan; Roldan asserts during that same period of time, he was told by David Berenda that the company could not offer health insurance benefits to him because the company was "too small to support [such] benefits."  Plaintiff's Response at 12-13.

Roldan has raised a factual dispute about whether he was treated less favorably than similarly-situated white employees. Based on Roldan's account of what happened in July 2002, a reasonable jury could find that Roldan was denied insurance benefits when

16

other similarly-situated white employees were not denied benefits.  Under this view of the

facts, the denial of insurance benefits to Roldan would raise an inference of race

discrimination. Such an inference is sufficient for Roldan to establish a prima facie case.

There is little doubt that Berenda can offer a legitimate, non-discriminatory reason

for not providing insurance benefits to Roldan from May, 2002 to September, 2002.

According to Berenda, Roldan's own inaction caused the delay in his insurance coverage.

Having articulated a legitimate, non-discriminatory reason, the burden reverts to

Roldan to show that there is a genuine dispute of material fact that the proffered reason

for the employment action is pre-textual.  If the employer's stated, non-discriminatory

ground for the action of which the Plaintiff complains is the true ground, then that action

is not pretext.  *See Forrester v. Rauland-Borg Corp*., 453 F.3d 416, 417 (7th Cir. 2006)

("[T]he question in a discrimination case is not whether the employer's state

nondiscriminatory ground for the action of which the plaintiff is complaining is correct

but whether it is the true ground of the employer's action rather than being a pretext for a

decision based on some other, undisclosed ground.").  Pretext, then, is a "deliberate

falsehood."  *Id*. at 419.  And if the stated ground is not the true ground, the case cannot be

disposed of on summary judgment.  *Id*. at 417.

The record here is replete with contested material facts pertaining to whether

Roldan was properly informed about the existence of insurance benefits and when and

how he could apply for them.  Roldan has produced evidence regarding Berenda's

explanation of its actions that calls Berenda's truthfulness into question.  *See O'Neal*, 293

F.3d 998, 1005 (7th Cir. 2002).  Specifically, Roldan asserts that when he applied for the

position with Berenda, David Berenda told him that the company could not offer health

insurance benefits to him because the company was too small to support such benefits.

(Roldan Dep. at 45:8-14; 46:16 - 47:1; 189:10-15).  There is also evidence in the record

tending to show that other similarly-situated employees were able to attain health

insurance benefits during the relevant period.  *See generally Curry v. Menard, Inc.*, 270

F.3d 473, 479 (7th Cir. 2001) (holding that a showing that similarly-situated employees

were treated differently may be enough to establish pretext).  These are issues for the jury

to determine.  Accordingly, the Court **DENIES** Berenda's motion for summary judgment

on Count III.

*D.  Count V*

Count V alleges that Berenda violated Indiana Common Law when Roldan was

constructively discharged for opposing conduct that would have held him personally

liable.  Berenda asserts that it is entitled to summary judgment on Count V because

Roldan cannot show that his termination violated any Indiana common law.

Indiana follows the doctrine of employment at will, under which an employer may

discharge an at-will employee, such as Roldan, for any cause or no cause at all without

incurring liability.  *See Wilmington v. Harvest Ins. Co.*, 521 N.E.2d 953, 955 (Ind. Ct.

App. 1988).  In *McClanahan v. Remington Freight Lines*, 517 N.E.2d 390, 393 (Ind.

18

1988), the Court recognized an exception to the doctrine of employment at will when it upheld a wrongful discharge claim for damages by a truck driver who alleged he was fired for refusing to violate Illinois state weight limits. The proposition is that "an employee who has been fired for exercising a statutory right or refusing to violate the law has a claim for wrongful discharge." *Cantrell v. Morris*, 849 N.E.2d 488, 494 (Ind. 2006) (citing Ind. Legal Encyclopedia, *Employment* § 45).

Roldan and other truck drivers at Berenda were subject to the Federal Motor Carrier Safety Regulations issued by the U.S. Department of Transportation, which limited the number of hours per day and the number of days per week drivers could legally operate their vehicles. 49 C.F.R. § 395.3. During the relevant period, the regulation prohibited a commercial driver from driving after being on duty (driving or not driving) seventy (70) hours in any eight (8) consecutive day period.[5] 49 C.F.R. § 395.3(b)(2). The regulation also limited a commercial truck driver to no more than ten (10) hours of driving following eight (8) consecutive hours off duty.[6] 49 C.F.R. §395.3(a)(1). In order to monitor drivers' hours of service and in compliance with federal regulations, Berenda utilized driver log books with attached carbon copies. Per federal regulation, log book entries must be made in duplicate, must be contemporaneous to the action and not pre-recorded, and the original log book must be submitted to the

---

[5]This regulation is referred to as the "70-hour rule."

[6]This regulation is referred to as the "8-hour rule."

employer.  49 C.F.R. §§ 395.8(a), (f)(1), and (h)(i).  Here, the top, white sheet was submitted to Berenda on a weekly basis, and the bottom, yellow sheet was retained for the driver for his records and, if needed, for review by the Department of Transportation. (Roldan Dep. at pp. 26 and 202-203).  The specific log book used in this case served to record employees' shift date, including the driver's hours of service, on-duty (not driving) time, driving time, time in the sleeper berth, off-duty time, and available hours of service remaining for the following day.  Defendant's Brief in Support Exhibit 5K-6 (Docket No. 29-5), excerpts from Roldan's "Driver'

s Daily Log."

Berenda contends that Roldan's log book shows a running number of hours for every 8 day interval during October of 2002 and establishes that Roldan never exceeded the 70-hour rule.  Defendant's Brief in Support at 11-12.  Moreover, Berenda asserts that Roldan did not violate the 8-hour rule because he had more than ten hours to get an eight-hour rest in Bensenville, IL before taking the midnight run to Louisville on October 31, 2002.  Defendant's Brief in Support at 12.  Berenda asserts that there was more than sufficient time to allow Roldan to complete that run without placing him in danger of violating the regulations.  Additionally, Berenda argues that Roldan violated federal regulations when he pre-recorded entries, altered original entries that did not correspond with the recorded duplicate entries, and failed to submit the original log book to Berenda. Berenda asserts that the "altered log book is too incredible to be accepted by reasonable

minds of a jury and does not create a genuine issue of material fact."  Defendant's Brief

in Support at 13.

Roldan claims that the log book entries raise genuine issues of fact which preclude

summary judgment.  Plaintiff's Response at 15.  According to Roldan, Berenda ordered

Roldan to falsify his log books.  Specifically, Roldan asserts that "[o]n those occasions

when Roldan was soon to exceed his 70 hour limit, David Berenda told him to use

disposable log sheets so that he could record his driving time accurately and later change

it to a shorter run and declare some of the time as off duty."  *Id*. (citing Roldan Dep., 205:

8-16 and 21-24).  In reference to the Bensenville run, Roldan claims that Roldan "refused

to log the hours in the manner suggested by Mr. Berenda" and asserts that questions of

fact exist as to whether his records "reflect an accurate accounting of his time or, rather,

an accounting of his time as Mr. Berenda would have wanted it."  *Id.* at 16.

When considering a Rule 56 motion, courts are not to weigh the credibility of

evidence.  However, "if a conflict appears as to a material fact the summary procedure

does not apply unless the evidence on one or the other hand is too incredible to be

accepted by reasonable minds or is without legal probative force even if true."  *598*

*Cases, Each Containing 24 Cans, More or Less, of Tomatoes v. U.S.*, 211 F.2d 249, 251

(7th Cir. 1954).  *See also Simms v. Reiner*, 419 F.Supp. 468, 475 (N.D. Ill. 1976)).

From the record before the Court, it is clear that there is are genuine and material

factual issues to be determined with regard to Roldan's log books.  The questions are

whether Roldan's records reflect an accurate accounting of his time and whether Berenda encouraged and/or condoned the practice of using disposable log sheets.  Therefore, the Court denies Berenda's summary judgment motion as to Count V.

VI.  Conclusion

    For the foregoing reasons, the Defendant's Motion for Summary Judgment (Docket No. 22) is **GRANTED in part and DENIED in part**.  The Court **GRANTS** Berenda's summary judgment motion as to Counts I and II of the Complaint and thereby dismisses Counts I and II of Roldan's Complaint.  The Court **DENIES** Berenda's motion for summary judgment as to Counts III and V of the Complaint.

**SO ORDERED.**

**Dated:   July 18, 2007**


                                    **S/ ALLEN SHARP**
                           **ALLEN SHARP, JUDGE**
                           **UNITED STATES DISTRICT COURT**

22